[No. F001266. Fifth Dist. Mar. 7, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME BLASQUEZ et al., Defendants and Appellants.

---

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**BROWN (G. A.), P. J.**—Appellant Jaime Blasquez is a licensed psychiatrist. He was convicted by a jury of eleven counts of presenting false Medi-

Cal claims, one count of grand theft, and one count of conspiracy. His wife, appellant Bernice Blasquez, acted as his bookkeeper and receptionist. She was convicted of the same counts except for one of the counts involving the presentation of a false Medi-Cal claim.

Appellants fraudulently obtained between $46,000 and $98,000 from the California State Medi-Cal program by billing the Medi-Cal program for psychiatric services which were not performed.

Pursuant to a search warrant, appellants' medical office was searched, resulting in the seizure of various documents, including patients' records and billing records.

Appellants' sole contention on appeal is that Penal Code section 1524, subdivision (c), deprives him of equal protection.[1] That section in part states: ". . . no search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is . . . a psychotherapist as defined in Section 1010 of the Evidence Code . . . and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with . . . ." The statute then delineates a procedure for appointing a "special master" who accompanies those persons conducting a search and takes possession of seized documents until a superior court hearing on search, seizure and privilege issues can be held. If the psychotherapist is reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested, the protection of having the search conducted by a special master and the holding of a hearing in superior court is not provided.

In the instant appeal, the seized records were under the control of appellant Jaime Blasquez who was reasonably suspected of having engaged in criminal activity related to the documentary evidence for which the warrant was requested.

■ Appellants contend that the lack of procedural safeguards on searches of a psychotherapist's records when the psychotherapist is suspected of criminal activity, as compared to the special master provisions that are applicable when the psychotherapist is not suspected of criminal activity, violates the equal protection principles of the United States and California Constitutions in that it "imperils the careers" of psychotherapists

---

[1]While it appears that the equal protection argument was not raised in the trial court, the issue is one of first impression and of public interest, and we elect to treat it on this appeal notwithstanding the fact it was not raised in the trial court.

and other professionals covered by subdivision (c) of section 1524 and denies them the right to be employed in their profession. Specifically, appellants argue that subdivision (c) imperils the careers of psychotherapists because people would choose to not be treated by psychotherapists if they knew their records might someday be scrutinized by the police. In addition, appellants argue that the most common instances where a search will be conducted without a special master under subdivision (c) are in cases where Medi-Cal fraud is suspected. Therefore, appellants argue, professionals who now accept Medi-Cal patients will be discouraged from doing so, thereby impacting on the professionals' practices. In other words, appellants argue that subdivision (c) infringes on appellant Jaime Blasquez' right to work. The right to work, appellants contend, is a fundamental interest which must be evaluated under the constitutional "strict scrutiny" test.

Assuming arguendo that appellants' description of the impact of subdivision (c) on the practice of appellant Jaime Blasquez' profession is accurate, it cannot accurately be described as depriving anyone of the right to work. Subdivision (c) does not prevent anyone from practicing any of the professions listed there (see *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), nor does it make it any more difficult for one to obtain the license needed to practice those professions. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10].) At worst, the impact of subdivision (c) on the professions covered by its provisions would be very indirect, collateral and marginal. Therefore, the characterization of subdivision (c) as imperiling the right to practice one's profession is inaccurate.

Instead, if patients are hesitant about going to a psychotherapist due to possible exposure of their records to the police when the psychotherapist becomes reasonably suspected of engaging in criminal activity or if the psychotherapists are hesitant about accepting Medi-Cal patients because of the possibility of a search of their patients' records, the impact on the psychotherapists would appear to be purely economic. In the area of economic regulation the rational relationship test is applied. (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1, 16.)

Even assuming that the right to work is a "fundamental interest," as discussed above, the impact that subdivision (c) has on this right is at best incidental or marginal. Where the impact on the fundamental interest is incidental or marginal, the rational relationship test is the proper test to apply. (*Zablocki* v. *Redhail* (1978) 434 U.S. 374, 386 [54 L.Ed.2d 618, 630-631, 98 S.Ct. 673]; *In re Flodihn* (1979) 25 Cal.3d 561, 568 [159 Cal.Rptr. 327, 601 P.2d 559].)

We conclude that in analyzing the equal protection argument in light of the facts of this case, the proper test to apply is the rational relationship test. The rational relationship test is satisfied if the legislative classification of subdivision (c), which treats professionals who are suspected of criminal activity differently from those who are not, bears a rational relationship to a legitimate state purpose. (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d 1, 16-17.)

■ Prior to the enactment of subdivision (c), allegedly privileged information in the possession of the professionals listed in subdivision (c) could be lawfully searched for and seized without the assistance of a special master. (See *Deukmejian* v. *Superior Court* (1980) 103 Cal.App.3d 253 [162 Cal.Rptr. 857].) Because of concerns about the basic need to protect privileged material in the possession of these professionals[2] and the need to balance the privilege against the state's interest in combating sophisticated white collar crime, the Legislature adopted subdivision (c) which mandates the use of a special master to insure the protection of the privileges involved, except where there is a reasonable suspicion of criminal activity on the part of the professional. Thus, the dual purposes of subdivision (c) are to protect privileged information in the possession of specific professionals and the need to combat white collar crime by permitting search of suspects by normal warrant procedure. This is a legitimate state purpose and the classification used in subdivision (c) (professionals reasonably suspected of criminal activity and all other professionals) is clearly rationally related to achieving these purposes. (See *McKirdy* v. *Superior Court* (1982) 138 Cal.App.3d 12 [188 Cal.Rptr. 143].) The statute does not violate equal protection.

The judgments are affirmed.

Hanson (P. D.), J., and Best, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 1, 1985.

---

[2]This concern was generated by the United States Supreme Court decision in *Zurcher* v. *Stanford Daily* (1978) 436 U.S. 547 [56 L.Ed.2d 525, 98 S.Ct. 1970]. *Zurcher* held, inter alia, that searches of third parties in order to obtain evidence in the possession of third parties did not violate the federal Constitution even though the third parties were not suspected of criminal activities.